**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| STATE FARM FIRE & | : | |
| CASUALTY CO., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:06-CV-2296-RWS |
| | : | |
| MONA BREWER, BOBBY | : | |
| BREWER, AND BISHOP EARL | : | |
| PAULK, | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

This case comes before the Court for consideration of: (i) Plaintiff's

Motion to Compel Testimony of Bishop Earl Paulk [63]; (ii) Plaintiff's Second

Motion for Summary Judgment [67]; and Plaintiff's Motion for Oral Argument

[68]. As an initial matter, the Court finds that it will not be aided by oral

argument on the matters raised in Plaintiff's two substantive motions.

Accordingly, Plaintiff's Motion for Oral Argument is **DENIED**. After

reviewing the entire record, the Court enters the following Order.

**Background**

Plaintiff State Farm Fire & Casualty Company ("State Farm") brought this action seeking a declaratory judgment that its homeowner's insurance agreement with Defendant Earl Paulk does not cover tortious injuries that Paulk allegedly caused Defendant Monica Brewer during their fourteen-year adulterous sexual relationship which began in 1989. These alleged injuries are the subject of a lawsuit filed by Mona Brewer in the State Court of Dekalb County, Georgia, alleging that Paulk intentionally manipulated and coerced Brewer into the relationship by "convinc[ing] her that the relationship was scripturally justified" and "condoned by the will of God." See Mona Brewer v. Earl Paulk, et al., No. 07-A-69161-3 (Complaint, ¶ 34.) Brewer alleges that Paulk "caused [her] to believe that a route to salvation for herself and for the preservation of Earl Paulk's ministry was for Mona Brewer to engage in these adulterous sexual acts," and brings claims against Paulk for breach of fiduciary duty, negligence, failure to protect, fraud, conspiracy, and intentional infliction of emotional distress. (Id. ¶¶ 35, 46-117.)

For purposes of the instant litigation, State Farm has entered into evidence the deposition testimony of Mona Brewer. Mona Brewer testified that

2

Paulk allured her (among other women) into a sexual relationship on the promise of divine salvation.  She described in some detail the nature of her fourteen-year sexual relationship with Paulk, testifying that she had sex with Paulk approximately 100 times per year over the course of a fourteen-year period.  (Dep. of Mona Brewer at 42-44.)  She also testified that during approximately ten of these 1400 or so sexual encounters, Paulk consumed whiskey and appeared "pretty drunk," to the point that "he would have a hard time standing up just to put his clothes back on."  (Id.)  The record does not indicate the date on which these ten or so instances of Paulk's intoxication occurred, and the record contains no further detail concerning the nature or circumstances of Paulk's intoxication on these occasions.

Paulk, for his part, has not introduced any evidence in this action to dispute that the alleged sexual activity and acts of manipulation occurred.  Nor has he testified that he was intoxicated on any particular occasion during which he and Mona Brewer had a sexual encounter.  Rather, during his deposition, Paulk declined to answer a substantial number of State Farm's questions by repeatedly invoking his Fifth Amendment right not incriminate himself.  Paulk indicated, however, that he was willing to answer State Farm's questions after

3

the resolution of any criminal proceedings against him.  Paulk has since pleaded

guilty to lying under oath during a deposition taken in the underlying state court

action, in which he falsely testified that Mona Brewer is the only person with

whom he had sex outside of marriage.[1]

State Farm now moves for summary judgment, seeking a court

declaration that Mona Brewer's claims are not covered by Paulk's homeowner's

policy because they are premised on "intended" or "expected" acts subject to

exclusion.[2]  State Farm also requests that the Court draw a negative inference

from Paulk's invocation of his Fifth Amendment right to silence and moves to

compel Earl Paulk to answer the questions posed to him at his deposition in the

event that the Court does not draw a negative inference.

---

[1] At the Court's request, both parties have supplemented the record concerning the effect of Paulk's conviction on the resolution of the motions currently pending.  Both parties responded that Paulk's conviction has little effect on the current motions pending before the Court.  In his response, Paulk also indicated that he is now willing to answer certain questions that he had previously refused to answer during his deposition.  Paulk, however, has not supplemented his deposition testimony or otherwise affirmatively introduced any  evidence or testimony to dispute the evidence in the record and the allegations in Mona Brewer's underlying civil action.

[2] State Farm also moves for summary judgment on the grounds that (1) Paulk failed to notify it of the existence of Mona Brewer's claim "as soon as practicable" and (2) Paulk failed to cooperate as required by the homeowner's policy in the defense of his claims.  Because of the Court's resolution below, it does not address State Farm's alternative grounds for summary judgment.

4

Paulk responds by conceding that intentional sexual misconduct is not covered under the policy and thus State Farm is not obligated to insure or defend Paulk against most of Mona Brewer's claims.  Nevertheless, Paulk contends that a factual dispute exists concerning whether, on the approximately ten occasions that Mona Brewer testified Paulk was intoxicated, he could have formed the requisite "intent" to act tortiously.  Relying solely on Mona Brewers' testimony that he was "pretty drunk" and had a "hard time standing up," Paulk contends that State Farm is not entitled to judgment as a matter of law because a fact question exists concerning the nature of his intoxication and his ability to intend his actions.

After reviewing the standard on summary judgment, the Court takes up State Farm's two remaining motions.

**Discussion**

**I.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

5

judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.    State Farm's Motion for Summary Judgment

State Farm contends that it is entitled to judgment as a matter of law because sexual misconduct is excluded from coverage under Paulk's homeowner's insurance policy.  The policy at issue insures Paulk against

7

personal liability for "bodily injury" that is sustained by others as a result of an

accidental "occurrence."  (See Ex. W to Pl.'s Mot. for Summ. J. [62]

[hereinafter the "Policy"].)  The Policy excludes coverage for bodily injury

which is "either expected or intended by the insured" or "which is the result of

willful and malicious acts of the insured."  (Id.)

Paulk concedes, in candid fashion, that virtually all of the acts

complained of in Mona Brewer's action—namely manipulation, coercion, and

sexual misconduct—are classic "intended or expected" acts that are not covered

by a homeowner's policy with an intentional-act exclusion.  (See Defs.' Resp.

to Pl.'s Mot. for Summ. J. at 2 ("In large part, Earl Paulk agrees that Mona

Brewer's claims are not covered events because a consensual sexual

relationship between adults is not an 'occurrence' under Earl Paulk

homeowner's insurance policy.").)  But after conceding all of these facts, Paulk

makes the remarkable argument that he is still entitled to coverage on a small

subset of Mona Brewer's claims—namely, for any injuries he caused Mona

Brewer on the ten or so occasions that he was intoxicated.  Citing Mona

Brewer's testimony that he was "pretty drunk" on these occasions, Paulk argues

that—on this testimony alone—a reasonable factfinder could conclude that his

8

conduct on these occasions was not "intended" or "expected" and thus any

resulting injuries to Mona Brewer were "occurrences" under the Policy,

triggering coverage.  With little difficulty, the Court disagrees.

In evaluating whether a claim is subject to coverage under a

homeowner's insurance policy, Georgia courts determine whether the subject

matter of the action concerns intentional or expected acts by considering both

the allegations in the underlying civil action and the evidence presented in the

declaratory action pertinent to those allegations.  See Penn-America Ins. Co. v.

Disabled American Veterans, 481 S.E.2d 850, 851 (Ga. Ct. App. 1997).  "[T]he

issue is not whether the insured is actually liable to the plaintiffs [in the

underlying action]; the issue is whether a claim has been asserted which falls

within the policy coverage and which the insurer has a duty to defend."  Id.   In

cases where the insured has been sued under an intentional tort theory, courts

have generally held that such claims are premised on intentional acts and, as

such, fall within an insurance exclusion for "intended or expected" occurrences.

Southern Guar. Ins. Co. of Ga. v. Phillips, 469 S.E.2d 227, 229 (Ga. Ct. App.

1996) (shooting injury not covered under homeowner's policy); Allstate Ins.

Co. v. Grayes, 454 S.E.2d 616, 619 (Ga. Ct. App. 1995) (shooting not covered

9

despite claim that insured acted in self defense).  Merely denying the allegations

in the underlying action does not entitle the insured to coverage; rather the

insured must present affirmative evidence in the declaratory action that the

"true facts show coverage."  <u>Harden</u>, 605 S.E.2d at 38-39 (holding that merely

denying allegations of sexual abuse did not entitle insured to coverage or a

defense because "it is not a claim that the true facts show coverage under the

terms of the policy").  For that reason, tort claims premised on sexual

misconduct are generally not covered under homeowner's policies, even where

the allegations are denied by the insured.  See <u>Harden v. State Farm Fire & Cas.</u>

<u>Co.</u>, 605 S. E. 3d 37, 38 (Ga. Ct. App. 2004) (holding that allegations of sexual

abuse were not covered under homeowner's policy because any injury caused

"could only have [been] expected and intended"); <u>Presidential Hotel v. Canal</u>

<u>Ins. Co.</u>, 373 S. E. 2d 671, 673 (Ga. Ct. App. 1988) ("It is alleged by plaintiffs

that the hotel, by and through its agents, sexually harassed and defrauded

plaintiffs.  Given these allegations of intentional conduct, it cannot be said that

any resulting bodily injury to plaintiffs was unintended."); <u>Roe v. State Farm</u>

<u>Fire & Cas. Co.</u>, 376 S. E. 2d 876, 877 (Ga. 1982) (holding that intentional

child molestation carries with it a presumption of intent to inflict injury and thus homeowner's policy did not cover child's claims against insured).

Turning to this case, Paulk concedes that virtually all of the "occurrences" of bodily injury alleged by Mona Brewer during the course of their fourteen-year sexual relationship are not covered under the Policy at issue because they were caused by allegedly intentional conduct.  Nevertheless, seizing on Mona Brewer's testimony concerning his alcohol consumption on approximately ten occasions, Paulk argues that certain of Mona Brewer's claims arise out of acts which may not have been "intended or expected" because Paulk, due to his intoxication, may not have had the capacity to act intentionally during those encounters.  Paulk relies solely on Mona Brewer's deposition testimony, during which she testified as follows:

> Q:   On any of those occasions, was Mr. Paulk under the influence of alcohol, drugs of any type?  Any kind of intoxicant.

> A:   Intoxicants.  Yeah, there were times . . . he had me go and buy whiskey, and he would drink whiskey while he had sex with me, and sometimes he would spit it into my mouth.  I don't know how many occasions that was.  Maybe 10.

11

Q:   Did he appear to—well, have you ever seen Earl Paulk
under the influence of alcohol?  Not just drinking alcohol,
but under the influence of alcohol.

A:   Besides those 10 or so times, no.  Not that I know.

Q:   And on those 10 or so times, was he drunk?  Was he
intoxicated, or was he just giddy, or what?

A:   He usually got pretty drunk.

(Dep. of Monica Brewer at 41-42.)

Questioned further, Ms. Brewer described Defendant Paulk's behavior

when he drank on those occasions.  She described Bishop Paulk as speaking

"dirty" about people and having difficulty clothing himself after the encounters:

Q:   And would you describe that behavior to me?  Drunk is sort
of a conclusion.

A:   . . . . Well he would tell me—he would say dirtier things and
he would tell me things about people that—I guess turned
him on.  And he would have a hard time standing up just to
put his clothes back on.

Q:   And that was on approximately 10 of the times?

A:   . . . Yes, sir.

Q:   And as I'm looking at the years here, talking about perhaps
as many as 14, at least 13 years.

AO 72A
(Rev.8/82)

> A:      Fourteen years.
>
> Q:      At least a hundred times a year?  Would that be fair?
>
> A:      At least.

(Dep. of Mona Brewer at 42-43.)

But when asked whether Defendant Paulk, despite his intoxication, had the mental wherewithal to understand his actions, Mona Brewer testified as follows:

> Q:      . . . . But for the 10 or so times that he was using whiskey, did Earl Paulk appear to you to be—have his wits about him, and knew what he was doing?
>
> A:      Yes, sir.

(Dep. of Mona Brewer at 44.)

Viewing this testimony in a light most favorable to Paulk—as the Court must in considering State Farm's request for summary judgment—the evidence shows that on ten occasions, Paulk consumed whiskey to the point of intoxication, such that he stumbled and had difficulty balancing while clothing himself.  The evidence also shows, however, that, despite this physical imbalance, Paulk "knew what he was doing."  (Id.)  A reasonable fact finder could not conclude based upon the above testimony that Earl Paulk was so

13

intoxicated that he was incapable of forming an intent to manipulate, coerce, or engage in sexual misconduct.  To the contrary, Mona Brewer's testimony demonstrates that, although he was "pretty drunk" and had a "hard time standing up," Paulk both intended and was aware of the consequences of his actions.

Paulk's bare reliance on Mona Brewer's testimony—and his resulting failure to enter any affirmative evidence of his own to dispute State Farm's case and establish the circumstances of his intoxication—entitles State Farm to summary judgment.  The law in Georgia is clear that an insured cannot create a factual dispute on intent in a declaratory action and trigger coverage by merely asserting that he did not intend his actions.  See Presidential Hotel, 373 S. E.2d at 673 (mere denial of allegation of sexual harassment not sufficient to trigger coverage under homeowner's policy); Harden, 605 S.E.2d at 38-39 (same); Phillips, 469 S.E.2d at 229 (firing gun, absent evidence to the contrary, indicates intent to injure); Grayes, 454 S.E.2d at 619 (same).  That is, in insurance coverage cases that have found a fact dispute on the basis of intent, the defendant-insured—unlike Paulk in this case—presented direct evidence that he or she was incapable of forming an intent or that his conduct was not

intentional.  E.g., State Farm Fire & Cas. Co. v. Morgan, 364 S. E. 62, 63 (Ga.

Ct. App. 1987) (holding that testimony that father was a "chronically heavy

drinker who, apparently without provocation," shot his son and his daughter-

and-law and them himself, combined with direct physical evidence that his

blood/alcohol content was .25 grams percent, created jury issue as to whether he

could have formed requisite intent to injure to be excluded from coverage under

homeowner's policy); Anderson v. Southern Guar. Ins. Co. of Ga., 508 S. E. 2d

726, 729-30 (Ga. Ct. App. 1998) (holding that insured's testimony at criminal

trial that she acted in self defense for alleged assault created factual dispute over

whether claim against insured for battery was covered by homeowner's policy);

Southern Mut. Ins. Co. v. Mason, 445 S.E.2d 569, 570-71 (Ga. Ct. App. 1994)

(insured's "emphatic[]" testimony that he did not realize bullet was in gun and

did not intend to fire gun when he pulled trigger created fact dispute as to

whether victim's injury was covered under homeowner's policy).

     Although Paulk relies heavily on the Georgia Court of Appeals' decision

in Morgan, Paulk has not introduced *any* evidence or any of his own testimony

to allow a reasonable jury to conclude that he was so drunk on any of the

alleged encounters that he could not have intended his actions.  He has not

testified, for example, as did the insureds in <u>Anderson</u> and <u>Mason</u>, that he

engaged in, but did not intend, any of the conduct alleged in this case.  Nor has

he entered any other evidence to establish extreme intoxication, as did the

insured's estate in <u>Morgan</u>.  Because Paulk has failed to offer *any* evidence

demonstrating that the "true facts" entitle him to coverage under the policy,

<u>Harden</u>, 605 S.E.2d at 38-39, State Farm is entitled to judgment as a matter of

law.

What is more, unlike the discrete, one-time, unprovoked shooting that

occurred in <u>Morgan</u>, the allegations and evidence in this action show that Paulk

engaged in regular—often daily—acts of intentional and adulterous sex over the

course of fourteen years.  Even assuming *arguendo* that one or several instances

of sexual activity occurred while Paulk was extremely intoxicated, it cannot be

said that any injuries which resulted from this encounter were not "expected" in

light of the Paulk's prior repeated intentional sexual misconduct.  Stated

differently, even if Paulk could carve out a single instance of sexual misconduct

alleged by Mona Brewer among the hundreds of instances as unintentional, the

record mandates the conclusion that such an act, even if *unintended*, was

reasonably *expected* as a matter of law in light of the Paulk's prior admittedly

intentional conduct and his long-term relationship with Mona Brewer.  <u>See</u>

<u>Tripp v. Allstate Ins. Co.</u>, 584 S.E.2d 692, 695-96 (Ga. Ct. App. 2003)

(shooting, even if not subjectively intended, could be expected to result from

robbery and thus not included within homeowner's policy under "expectation"

exclusion, which is measured by objective standard).  The exclusion for

"expected" injury thus entitles State Farm to summary judgment as well.

Paulk contends that granting summary judgment in State Farm's favor

would unconstitutionally penalize his Fifth Amendment right to remain silent in

the face of criminal prosecution.  It is well established that "the Fifth

Amendment does not forbid adverse inferences against civil litigants. . . who

assert the privilege against self-incrimination."[3]  <u>Arango v. U.S. Dep't of the</u>

<u>Treasury</u>, 115 F.3d 922, 926 (11th Cir. 1997) (collecting cases).  "A party who

asserts the privilege may not 'convert [it] from the shield against compulsory

self-incrimination which it was intended to be into a sword whereby [he] would

be freed from adducing proof in support of a burden which would otherwise

---

[3] There is an exception to this rule when the party in the civil case is also a defendant in a criminal case and is forced to choose between waiving the privilege and losing the civil case on summary judgment.  <u>Two Parcels of Real Property</u>, 92 F.3d at 1129.  Paulk does not contend that he is currently a defendant in a criminal case being forced to choose between losing summary judgment or incriminating himself.

AO 72A
(Rev.8/82)

have been his.' " Id. (quoting United States v. Rylander, 460 U.S. 752, 758-59, 103 S. Ct. 1548, 75 L. Ed. 2d 521 (1983)).  "In other words, a 'party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence,' and the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation." United States v. Certain Real Property and Premises Known as 4003-4005 5th Ave., 55 F.3d 78, 83 (2d Cir. 1995) (quoting United States v. Taylor, 975 F.2d 402, 404 (7th Cir. 1992)). This principle holds true in a proceeding concerning the scope of coverage in a homeowner's insurance policy.  Anderson, 508 S.E.2d at 731 ("Anderson cannot wield her Fifth Amendment privilege as a shield and a sword by demanding coverage and a defense under the insurance contract, while at the same time refusing to answer questions material to determining Southern Guaranty's duties under the contract.").

As stated above, Paulk has failed to enter any evidence to dispute State Farm's evidence that the entire subject matter of the litigation against him concerns "intended or expected" acts that are excluded from coverage under the Policy.  Moreover, even after the resolution of one criminal proceeding which

18

arose out of his deposition testimony in the related state action, Paulk has

entered no evidence into the record to controvert that the subject matter of

Mona Brewer's underlying action against him concerns intentional or expected

acts.  His failure to controvert Mona Brewer's allegations—at a time when he is

now apparently willing to be further deposed by State Farm—undermines his

claim that summary judgment burdens his Fifth Amendment rights.  At the

same time, it exposes that Paulk has invoked the Fifth Amendment both as a

means to shun State Farm's questioning and to defeat State Farm's Motion for

Summary Judgment.  But because Paulk may not "wield [his] Fifth Amendment

privilege as a shield and a sword by demanding coverage and a defense under

the insurance contract, while at the same time refusing to answer questions

material to determining [the insurer]'s duties under the contract," the Court

rejects Paulk's attempt to defeat summary judgment on Fifth Amendment

grounds.

     For these reasons, State Farm's Second Motion for Summary Judgment

[67] is **GRANTED**.

19

### III.    Motion to Compel

In its Motion to Compel, State Farm requests that this Court compel Bishop Paulk to testify should it not draw a negative inference from his invocation of his Fifth Amendment right to refuse to give testimony against himself.   As a result of the Court's resolution above, State Farm's Motion to Compel the testimony of Earl Paulk [63] is **DENIED as moot**.

### Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel Testimony of Bishop Earl Paulk [63] is **DENIED as moot.**  Plaintiff's Second Motion for Summary Judgment [67] is **GRANTED**.  The Clerk shall enter judgment in favor of Plaintiff and against Defendants in this action.  Plaintiff's Motion for Oral Argument [68] is **DENIED**.

**SO ORDERED** this   15th   day of February, 2008.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

20

AO 72A
(Rev.8/82)